I'll begin with mootness and then turn to the interpretation of the First Step Act. The underlying controversy before this Court and the party's interest in having that controversy resolved have not changed. Stinson filed his petition and alleged that he was unlawfully denied time credits. The other side argues that Stinson was not entitled to those time credits, and the relief that Stinson seeks would cure the injury of the refusal to grant him time credits. That is a live controversy. Nothing, no law of physics prevents that relief here. Sharpening the focus before this Court, Stinson seeks the reversal of the District Court's judgment dismissing his petition, which was based on a misinterpretation of the First Step Act. That result here would give Stinson effectual relief by moving his case forward towards an ultimate decision in his favor. If Stinson receives only that relief, then any further questions about what the District Court can ultimately award based on other parts of the statute that aren't directly before this Court or the party's status, which isn't directly presented here in this appeal, those can wait for the District Court to decide. This Court has jurisdiction to decide the merits question that underlies the District Court's opinion, and it has an unflagging duty to exercise that jurisdiction here. If the Court goes beyond and reaches respondents' mootness arguments, it should reject them. Respondents' mootness arguments come in two flavors. One concerns whether Stinson's requested relief is legally available. The other concerns the usefulness of Stinson's requested relief. That first argument is easily disposed of by applying both the Supreme Court's decisions in Moak and Chafin, where in both cases the Court said that questions about whether relief is legally available go to the merits, not jurisdiction. And regardless, numerous decisions cited by Stinson in his most recent letter to this Court show that Respondent misconceives the scope of 2241 for federal prisoners. Respondent's second argument, for this one it's important to first be clear about what the parties do not dispute. The parties do not dispute that Stinson was injured. Stinson claims he was unlawfully denied benefits that a statute entitles him to. The unlawful denial of benefits is an injury, and there's no dispute that the relief he seeks, which is recalculation of his time credits, would redress that injury. Putting aside these questions of injury is important because the most off-sited cases on standing and mootness and such things deal with a probabilistic injury in the future. Those are the, that's Clapper, that's City of L.A. v. Lyons, sort of those classic cases. And while a speculative injury is not enough for jurisdiction, a speculative benefit from curing an injury is enough for jurisdiction. And that's the lesson of Arlington Heights, Chafin, MOAC, Mission Products, all cases that we cited in our briefing, and numerous other decisions. To take a common example, licenses and permits. These are not goals in themselves, but they are useful for accomplishing some goal down the line that may or may not come to fruition. And a person injured by a denial of a license or permit may seek judicial relief to cure that injury, even if the ultimate usefulness of receiving that permit or license is contingent on numerous events. Likewise, the ultimate usefulness to Stinson of these time credits is contingent. But that does not eliminate Stinson's concrete interest in this case. Again, it's any concrete interest, however small. And so some examples of cases that Chafin cited I think help drive this point home. One of them is Larabee v. Larbee, a case from this court, under the Hague Convention for Child Abduction. There, as in Chafin, a child was taken from the country, greatly reducing the potential benefit of any order from a court. Nonetheless, this court said that the case was not moot. And one of the reasons it said so was because our decision may also have implications as to any future custody proceedings. That is, a hypothetical court proceeding in the future granting the relief now could affect that proceeding. And that was enough to stave off mootness. Let me ask you a question. Yes, Your Honor. As of today's date, has Stinson lost any earned time credits? Oh, that's not in the record, Your Honor, and I'm not aware that he has. Is the same answer, as of today's date, how many time credits has he earned? That's correct, Your Honor. The most recent date is, I think, around the time of the briefing in the district court, and there are attachments in the record there that show how much he's earned. And I think you could extrapolate out sort of how much he's got now if you assume that he has not lost any. What law does his custody currently violate? Sorry? What law does his incarceration currently violate? Sure, Your Honor. The execution of Stinson's sentence and the condition of his detention are currently in violation of the First Step Act. The First Step Act says that Stinson shall earn time credits upon completion of programs and activities. There's no dispute that he's completed those. Well, if the Bureau of Prisons were to award him time credits for the period in question, what effect would that have on his custodial status today? There would be no immediate effect on his custodial status, just as in the cases of Chafin and Moak and Mission Products and all the other cases, and Arlington Heights as well cited. There was no immediate effect of giving the relief sought. Again, the usefulness of the relief that Stinson seeks is contingent. That's true. And that was true in all those other cases. The question is whether or not the court can award effectual relief for Stinson's injury. Stinson's injury is unlawfully denied time credits. Stinson asks for a recalculation of those time credits. The court can grant that relief. There is no requirement, and I think the entire system would not work if there were a requirement that whatever somebody's sort of ultimate goal or whether the ultimate benefit would accrue from curing an injury, whether or not, if that needed to be immediate and concrete, then almost in no case would have jurisdiction. I mean, you think about the sort of prototypical suing somebody or some company who is insolvent. You have your judgment for money damages. Your chance of getting that money is quite small, and indeed the court in Mission Products said that relief for the plaintiff in that case may not make him better off at all. And nonetheless, the court had jurisdiction, because the ultimate usefulness can be speculative. To take one more example that Chafin cited, US v. Villamonte Marquez. There, the United States was appealing a court of appeals decision that vacated various convictions of persons who had since been deported. And the court said that that deportation did not moot the case, because the respondents have, because, quote, a reversal of the court of appeals, in the future there would be a possibility that respondents managed to reenter the country on their own, and they would then be subject to arrest and imprisonment for these convictions. That is extremely speculative, and yet there was no mootness, and that case was again relied on in Chafin, where again, the effect of any order to return the child to the US, there was no immediate concrete effect. You had to go to Scotland, Scotland had to recognize it, had to enforce it, and the court said that that would not, that that did not result in mootness. Well, at the time that he petitioned the court, he argued that the proper provision of his earned time credits would allow him to accelerate his sentence, correct, both by accelerating his transfer to pre-release custody and by reducing his term of supervised release. He's already been placed into pre-release custody, is that correct? That's correct, Your Honor. If that was his argument, what impact does that have on your arguments now that he's already in pre-release? None, Your Honor. The relief that he sought is at ROA 12 and 17, and the relief that he sought was a recalculation of his time credits. To be sure, at the time, Stinson, he has waited quite a long time. He has filed motions to expedite that were ignored over and over and over again, and so he was not able to get the best outcome. But that does not mean that the case is moot, because he no longer can receive the best outcome. I mean, that's the ultimate fact situation in these hate convention cases, too. The parent has left with the child. In Chafin, the district court refused to stay its judgment, and hours later, the parent left with the child. To be sure, at an earlier time, it was possible to get more effectual relief, but the fact that that opportunity is gone does not eliminate the possibility of any relief that would help Stinson and be useful to Stinson. And again, it's a concrete interest, however small, and that is what we have here. If I could turn quickly to the merits, I think the merits here, the district court relied on a misinterpretation of the First Step Act, and that misinterpretation is easily seen by simply looking at the plain text of the statute. Congress made specific and detailed choices about what limitations would be available or what limitations would be put in on when prisoners would not earn credits. The respondent here in the Bureau of Prisons have admittedly created their own, and as our briefing shows, there is no room for that innovation. 3632 D4A says that prisoners shall earn upon completion of activities and programs, and then it says how to calculate that. Prisoners shall earn. That language admits of none of the exceptions that BOP has created here, and then if you go down to B, you have the limitations. Congress thought about these and put them in here. By putting them in there and leaving out the ones that BOP now says, Congress has precluded BOP from creating those limitations. Now, BOP argues that, well, it's successful participation is what D4A says, and you can't successfully participate if you haven't been assessed or assigned to programs or activities, but there's no way to reconcile that with the Act. Number one, activities don't require assignment. Number two, again, the Act speaks expressly about assessments under the tool and assignments, and yet Congress chose not to connect the earning except as a bonus. If you have two consecutive assessments in your lower minimum, then at that point you get a higher earning. Congress knew how to connect these things, and it chose not to. And the other point is D4B Romanet 1 says you can't earn credits for programs completed before the enactment of the First Step Act. Well, if you couldn't earn credits before you were assessed and assigned under the First Step Act, Congress would have no reason to specify that you couldn't earn them for programs completed before the Act came into existence. That would necessarily follow. So respondent's reading would render 4B1 superfluous, and that is a strong reason to reject the limitations that they have imposed on Stinson here. Thank you, Mr. LaFantasi, you've reserved some time for rebuttal. Thank you. Good afternoon, Your Honors. Shana Smitherman on behalf of the Warden and the Federal Bureau of Prisons. May it please the Court. This matter originated as a petition for a writ of habeas corpus under 28 U.S.C. 2241. My friend has framed this appeal as a simple request for a recalculation of time credits. And I do agree that at the heart of petitioner's writ is a claim that the calculation of his earned time credits under the First Step Act were not proper and a challenge on the BOP regulation at issue, which is 28 CFR 523.42a. But before we can reach the merits of any textual analysis of this regulation, we have to clear the jurisdictional hurdles. This Court lacks jurisdiction over this habeas matter for three reasons. The claim is now moot, the claim is not ripe, or the claim as refashioned by the appellant is no longer ripe, and the claim is not cognizable and habeas. These are all distinct principles, but they tend to overlap in the cases in these habeas matters, but the precedent is clear that each issue goes directly to the subject matter jurisdiction of a writ of habeas corpus under Section 2241, and that this Court cannot grant habeas relief that does not terminate custody, accelerate a future release date, or reduce a level of custody, and none of that is present here. So my friend on the other side is adamant that BOP's jurisdictional arguments are not actually jurisdictional because they reach the merits or the scope of the relief requested, and that they've been waived in any event, but his arguments are well articulated but red herrings and not applicable to this specific matter. This isn't a case for damages, this isn't a civil rights matter or a declaratory action or even an action for review of the regulation under the Administrative Procedures Act. This is a writ of habeas corpus filed by a prisoner under Section 2241, and under Section 2241 . . . Let me interrupt you. You said it's a habeas petition. Is it best to claim that your claims for your client are addressed under habeas or 1983? No, it's a petition for habeas under Section 2241. It's not a 1983 claim, and I don't . . . But is that the best way to address it for us? I think had the petitioner raised a civil rights claim, and I believe 1983 is only available related to state law issues, but it would be a civil rights claim under the federal jurisdiction, I think that a petitioner could have raised that issue with the First Step Act, and it would have been more cognizable than having done so in habeas. The problem is this case originated in spring of 2023, and in the fall of 2023, the petitioner, and this is in the record, I believe at ROA 12 is when he's asking for the reduction, and he's challenging the validity of this regulation so that he could achieve an earlier transfer to pre-release custody. So at the time of the original briefing, the petitioner was seeking a transfer to pre-release custody in, I believe, October of 2024. In the record, the Bureau of Prisons calculated the actual release date for the prisoner as July 15th of 2027. Adding to that, when they added the good time credits, the original release date was calculated with good time credits as July 15th of 2027. Adding the 365 earned time credits under the First Step Act that are allowable under the law to expedite supervised release, that gets him to July 15th of 2026. That was also always in the record. At the time, BOP had the transfer to pre-release custody date calculated as May 7th of 2025. Of course, after the district court, which, by the way, did not reach our jurisdictional arguments in its decision, it addressed failure to exhaust administrative remedies and then went straight to the textual analysis, but the district court dismissed it. The briefing ensued in this appeal, and then, of course, after the briefing had concluded prior to the appointment of counsel for the petitioner, he was transferred to pre-release custody. He's now in a residential reentry center in Cincinnati, I believe. His release date to supervised release, which is actually a transfer out of custody, while pre-release custody is still a custodial placement, supervised release is considered a form of  That date still remains July 15th of 2026. At this time, no amount of earned time credits is going to facilitate or accelerate that July 15th, 2026 release date. For that reason, we have argued that the case is moot. At the earlier stage, we did argue that this case was not cognizable under habeas because you have to be able to show, as I just explained, that there is either a termination of custody at release or a change in a level of custody. I think that the argument at that time was that the transfer to pre-release custody would be a change in the level of custody, but that is actually not the case under the law. Counsel, if he had gotten the time credits that he contends he's entitled to, would he have been placed in pre-release custody earlier than he was? No. BOP's position is that his transfer to pre-release custody was calculated properly. However, the petitioner is not legally entitled to a judicial review of a transfer to pre-release custody because Congress left that to the discretion of BOP in the actual statute. That is 18 U.S.C. 3621 B5. That is also incorporated into the First Step Act related to pre-release custody at 18 U.S.C. 3624 C4, which says nothing in the subsection, so I'll limit the authority of BOP under 3621. Therefore, even asking that question wasn't proper within the jurisdiction of the district court, which is what we argued at the lower court level. I believe it's ROA 56 through 59. Counsel, I'm not sure that answers my question. I'm just trying to figure out what the difference would have been if he had gotten the credits that he wanted. I think he argued that he would have been placed into pre-release custody. He would have gone to the RRC earlier, and I'm just simply asking as a practical matter, is that true? He could have been eligible to go. Eligible to go earlier. Under the First Step Act, the 365 credits that are earned can go to supervised release, and anything that an inmate earns above and beyond that can accelerate their transfer to pre-release custody. However, it is not mandated that the BOP transfer an inmate to pre-release custody at any time. It could have expedited his eligibility. Correct. Do we know by how much? I do not. The BOP did not recalculate for that scenario. Okay. Thank you. Let me interrupt you again before you start back. Can you direct us to any case in which a federal court has found that a prisoner does not start earning time credits until he reaches his BOP facility rather than the day he was sentenced? Yes, Your Honor. The designated facility regulation is a case of first impression here. There have been various district court decisions analyzing the issue throughout the country. To my knowledge, this case is the only district court decision in our circuit. However, there are several that support Mr. Stinson's analysis and interpretation of the regulation in the First Step Act, and there are several that support BOP's interpretation of the statute. In the District of Massachusetts, Dunlap v. Warden, that court held that the FSA leaves it to the BOP to implement the rules for determining when they are successfully participating in the BOP-approved programming. No court of appeals? No. Not to my knowledge, Your Honor. I do believe that an appeal has been filed in the First Circuit, but I think we're ahead of them in the briefing and the oral argument. I want to address for the court three specific cases and decisions from this court that I believe are more on all fours with our jurisdictional position than that of my friend and the cases that he cited. The first case is Herndon v. Upton. In that case, the court examined a 2241C3 writ of habeas, and they analyzed the case or controversy requirement. The case has upheld the 2241C. There are two requirements that the prisoner has to meet in order to bring this writ before the court. One is that they're in custody, and nobody is disputing that Mr. Stinson is in the custody of the BOP at this time in his pre-released residential reentry center. However, the controversy lies in the case or controversy requirement that the custody violate the U.S. Constitution or a law or a treatise. Otherwise, this matter cannot sound in habeas, and this court does not have jurisdiction to make such a decision. These three cases that I'm going to cite to you, Herndon v. Upton, which was Fifth Circuit in 2021, and the court dismissed that case as moot due to the prisoner being released. They found that the case of controversy requirement for jurisdiction was not met at that point because it was not going to terminate or accelerate release regardless of the decision that was made in that case. That case cites Maling v. Cook, which is a United States Supreme Court case that recognized the 2241C3 custody requirement as jurisdictional for a habeas claim. I think that just underscores that although my friend has cited certain cases that specify general jurisdictional provisions, those are not applicable here. The precedent is clear that for a 2241C3 writ of habeas, you have to satisfy the case and controversy requirement, which means that you have to show that the custody is unlawful, and that's not the case here. I'd also like to point the court to Robinson v. Lupinto. This Fifth Circuit decision actually came after the MOAC decision that my friend spoke of earlier. This decision explains what cases are cognizable in habeas, and they declined to extend jurisdiction when the relief the petitioner wants is derived from arguments related to the proper interpretation of federal law, even if the court agreed would not terminate custody, accelerate its conclusion, or alter the level or category of custody. That's really what we have here. Even if this court were to reach the textual analysis of the regulation and agree with Mr. Stinson's interpretation of the First Step Act and order BOP to recalculate these time credits for that 11-month period at issue, it would not change the outcome. It would not terminate his custody. It would not accelerate his release date to supervised release, and it's not going to change his level of custody at this moment. I would also like to direct the court to the Sample v. Morrison decision of the Fifth Circuit in 2005. In that case, a prisoner filed a Section 2241 habeas petition challenging the calculation of good time credits based on the BOP's application of 18 U.S.C. 3624B, which I believe is the Second Chance Act, so not the First Step Act here, but they are looking at a law. The court in that case also dismissed for lack of subject matter jurisdiction, noting that whether the time calculation on the basis of BOP's interpretation of the statute or the petitioner's, the inmate will not be eligible for earlier release. That is what we have here. The fact that Stinson would not be eligible for earlier release to supervised custody was initially raised in the lower level, but it was not addressed by the court, and again, that's ROA 56 through 59. So the ripeness argument has morphed somewhat now. In the earlier stages, the argument was based on the fact that Mr. Stinson had not yet reached the period where the remainder of time left would equal the amount of time credits calculated, and that is statutory where the credits cannot be applied until the amount that you have left is equal to the amount of credits that you have. So he was a little early. Since that time, we've now encountered the mootness argument, and my friend has kind of brought up a new argument, but also is not ripe, and that there are this hypothetical scenario where Mr. Stinson could possibly lose FSA time credits in the future based on some disciplinary action that hasn't yet happened, but again, that's all hypothetical, and so that makes the claims not ripe either. So like the petitioner in Robinson v. Lipinto, the relief that he wants is derived from his argument that a proper interpretation of federal law means he's entitled to additional earned time credits under the FSA, but like the petitioner in Robinson, even if this court agreed, it would not terminate his custody, accelerate his release, or even alter the level of custody because 18 U.S.C. 3624 G3 expressly prohibits application of time credits under 3632 to supervise release for more than 365 days. I would like to just briefly distinguish Chafin and correct something that I heard my friend say earlier. They've cited Chafin for the possibility or the proposition that if the relief doesn't have immediate effect, then that's still okay, but that's not what Chafin stood for. The Chafin court, in reviewing the father's petition on the custody dispute, said that it would have immediate effect. If the court were to have overturned that order, the order would have been immediately enforceable, and whether or not the mother, who was then in Switzerland, chose to comply with that order was the issue that was uncertain. It wasn't that the order wouldn't have had effect, it's just the person that it was ordered against may not have complied. That's not the case here. There's no scenario where this court could issue an order on the time credits that would accelerate Mr. Stinson's release date to that which he already has, and that's in the record at the lower level. Then, my time is running out, but I do want to make a few points briefly about the merits of the case. If this court were to find that there's subject matter jurisdiction to consider that argument, it is a case of first impression for this circuit, and I believe the circuits around the nation. There is a case out of the 11th Circuit, and it's fairly recent, it's 2024, Guerrero v. Miami. It's not directly on point for this issue, but a Pro Se prisoner did appeal the denial of a petition for writ of habeas corpus under 2241C in that case, and the 11th Circuit reviewed the FSA and 18 U.S.C. 3624G, and found that FSA credits beyond 365 cannot be used to reduce the term of supervised release. It's not directly on point, but it does address the issue of the fact that you cannot get more than 365 days towards your accelerated release date. Then again, the Dunlap v. Warden is the District of Massachusetts case where it did address this issue and rule in favor of the BOP's interpretation of the regulation. Miles v. Bowers, District of Massachusetts, same result, and then the Stevens v. Jacquez, District of Oregon. That case has a full discussion of the FSA system that I think is really on point here. What it says, and what we've argued, is that 3632D4B doesn't necessarily mean that an inmate earns or is entitled to an award of S.A. time credit as of the date the term of imprisonment commences under 3581, because there's other steps that must happen first. It's not a one-size-fits-all issue. There has to be an assessment. There has to be an assignment of particular programming by the BOP based on that inmate's particular criminogenic needs. Then there has to be successful participation. The timing can be somewhat different. I know the briefing did describe that the inmates at the time of sentencing are not always in custody of BOP at all, because the marshals do contract with local and state facilities. For Congress to have left that gap of when an inmate must begin earning to the discretion of BOP, it makes perfect sense, because BOP has to have some leeway to fashion the program that's appropriate for the inmates to reduce recidivism, which is the point of the First Step Act. I would just point to the Dunlap v. Warden decision again, where the judge in that case did note that although unfair in that particular case, and as the case may be here, it may seem unfair, but that does not make it illegal. I would just ask that the court keep those cases in mind when reviewing this issue. We would ask that the court dismiss this appeal as moot, or alternatively, if mootness does not apply, I think that the proper remedy would be to vacate and remand back to the court with instructions to dismiss for lack of subject matter jurisdiction. Thank you. May it please the court. I'll begin with what my friend just finished with, which was the need for BOP to have some discretion, because sometimes prisoners are in their custody and sometimes they're not. The system, the statute is directed towards the Attorney General. This part is what the Attorney General is supposed to do. It's not for BOP. So the fact that the Attorney General delegated it to BOP does not suddenly bring into the statute some need to accommodate BOP. Well, he's only in BOP custody here. He's in a BOP facility, but he's in a marshal bed, a U.S. marshal bed here. You know, that's nice for BOP, but that's not in the statute. And Congress would have no—there's nothing that would require the Attorney General to delegate this to BOP. So BOP-specific concerns don't enter in here. On the idea that—I think, Judge Ramirez, your question about being transferred to pre-release custody, Stinson was transferred at the earliest point in which he had credits. There's no reason to think that he would not also have been transferred at the earliest point had he received the credits that he should have received. And so he was held in a penitentiary longer than he should have been, according to the First Steps Act. But ultimately, that again gets into sort of the contingency of what the usefulness is of getting the credits. So my friend talks about how well BOP—it's ultimately BOP's decision whether or not to let you go. And that sort of focuses the issue here and why it does not depend on something like that. Like, he would not have even had the opportunity for BOP to exercise that discretion, as happened here, if he didn't get the time credits. Does that turn it into a conditions of confinement as opposed to a release from custody issue, though? Yeah. So that's very important, and I do want to address that. First, there's some semantics involved here. Conditions of confinement are typically viewed as sort of the typical, like, Eighth Amendment violation, sort of what are you kept in, things like that. Conditions of detention are something very different. And this is what the Supreme Court talks about in Jones v. Hendricks, a case from 2023 that my friend just won't talk about. Because it is clear that things that go to conditions of detention, not release, are cognizable under 2241. The Supreme Court expressly says that these things over conditions of detention or otherwise termed the execution of your sentence are cognizable under 2241. Now, my friend raises various cases, and it's very difficult when new cases are brought up in oral argument to respond to them. But I will say that she describes Herndon as being moot because the person was released from custody. And I do agree that there is a custody requirement under habeas. But as she also said, there's no dispute that Stinson is in custody. So that case doesn't do anything here. And she also says that this is a 2241C3 case, the sort of you're here under an unconstitutional statute or law. But C1 says, are you in custody pursuant to the laws of the United States? That's all it says. And it's an alternative. Can you address her ripeness argument that if the only use for the credits now is a rainy day fund or some contingent effect, then why is this ripe? Because she's falling into treating that as an injury. So if the injury was contingent on him sort of getting in trouble, then yes, that's a  The injury is the denial of the time credits. They are useful in that future thing. This is the prisoners reentering or the convicts reentering the country. Right? Like the cure for the court in that case in US v. Villamonte Marquez was reversing the  Whether or not that's going to be useful depends on those prisoners getting back over the border and getting caught. So the injury is different. And I can leave this court with one thing. It is that the speculative nature of the usefulness, that is sufficient to support standing. That is over and over and over again. And just one more thing. If you look at the cases cited in our most recent letter about what you get under 2241, all of them involve petitions that sought relief that would not have resulted in a change, in an automatic change in the duration or level of confinement. They are trying to change 2241. In this sort of little case, they are trying to radically change the scope of 2241. And I would ask the court to reject that. Let me interrupt. You're out of time. Thank you. And please reverse the district court. Thank you. You mentioned mootness. Under the FSA, only 300 days of credit for early transfer. It's already in pre-release custody and has 365 credits applied to supervised release. Why isn't it moot? So for one thing, the example that we gave, if he were to lose time credits for swearing in his pre-release custody, he would have these other time credits. Another point we made was that there is a statute that allows for the reduction of supervised release in the interest of justice. And the fact that he was kept confined in a penitentiary for months longer than he should have been is a good reason to reduce supervised release. And that's the Larbee v. Larbee case that we talked about where there could be this future proceeding in which curing this injury here matters. And so that's another example of why this case is not moot. Thank you, Your Honor. Mr. LaFont, I note that you were appointed to represent Mr. Stinson in this case. Yes. So on behalf of the court, I just want to say thank you for your able and zealous representation of Mr. Stinson. Thank you. It was my pleasure. All right. Court is adjourned until 1 p.m. tomorrow.